# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1550

_____

| | | |
|---|---|---|
| Eric D. Bailey, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Douglas Weber, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 17, 2001

Filed: July 10, 2002

_____

Before WOLLMAN,[1] Chief Judge, MURPHY, and RILEY, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Eric Bailey appeals the district court's[2] denial of his petition for habeas corpus filed pursuant to 28 U.S.C. § 2254. We affirm.

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002. He has been succeeded by the Honorable David R. Hansen.

[2]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota.

## I.

Bailey was indicted by a Minnehaha County, South Dakota, grand jury on one count of first degree murder and one count of first degree manslaughter, the charges arising out of the shooting death of Anthony Rowe outside a bar in Sioux Falls, South Dakota.

The state trial court appointed Sidney Strange, an attorney with more than twenty-five years of experience in representing defendants in state and federal court, to represent Bailey. With the trial court's authorization, Strange hired a private investigator, two firearms experts, a forensic pathologist, another lawyer, and a legal intern to assist him in preparing Bailey's defense. Jury selection took place during the week of October 3, 1994. Although the parties engaged in plea negotiations during the selection process, no agreement was reached. Following jury selection, the trial court granted Bailey's motion for continuance based upon a claim of newly discovered evidence, and the case was rescheduled to February 21, 1995.

On February 13, 1995, Bailey authorized attorney Strange to discuss with the prosecutor a possible plea bargain. The following morning the prosecutor informed Strange that the state would allow Bailey to plead guilty to the first degree manslaughter count. The first degree murder count would be dismissed, thus allowing Bailey to avoid the possibility of the death penalty or a mandatory life sentence without possibility of parole. The first degree manslaughter count carried a maximum sentence of life without parole, but no mandatory minimum sentence.

Attorney Strange communicated this plea offer to Bailey at approximately 8:15 a.m. that same day, and spent some two hours discussing the plea offer with Bailey during the course of the morning. Bailey indicated that he desired to enter a guilty plea, and Strange notified the trial court of that fact at about 3:30 that afternoon. Accordingly, the trial court conducted a hearing at 4:00 p.m. that day, during which

it concluded that a factual basis existed for the plea and that Bailey was voluntarily and knowingly entering the plea. During the ensuing presentence investigation process, Bailey advised a court services officer that he felt that he had been hurried into entering the guilty plea, that he had not had sufficient time to consider the plea agreement, that he had been misadvised regarding his situation, and that he wanted to withdraw his plea.

On March 27, 1995, Bailey filed a motion to withdraw his guilty plea, alleging that he had been hurried into the courtroom for the plea hearing on February 14, that he had not yet made a firm decision whether to enter a guilty plea, that he did not remember the proceedings, that the plea was not his but his attorney's, that his lack of education and intelligence interfered with his ability to enter a fully informed and voluntary plea, and that he was innocent of the crime and had no memory of it.

The trial court held a hearing on the motion on June 6, 1995, at which the psychiatrist who had examined Bailey testified that Bailey, who has an IQ of 66, was mildly mentally retarded and that he might not have understood the questions put to him during the plea hearing.

Strange testified that he had spent substantial time during the course of his representation explaining to Bailey his rights and the advantages and disadvantages of entering a guilty plea. His consultations with Bailey included four or five hours during the initial round of plea negotiations, another four or five hours while the plea offer was being discussed, and two hours on the day Bailey pleaded guilty. Strange testified that he went over the information several times and that he was satisfied that Bailey understood what was being explained to him.

The trial court denied Bailey's motion to withdraw his plea and on July 7, 1995, sentenced Bailey to life imprisonment without parole. Bailey appealed his conviction to the South Dakota Supreme Court, which held that although Bailey lacks

basic math skills and understanding about the workings of the government, he understands the functions of the participants in a court proceeding. The court found that Bailey's previous experience with the criminal justice system, viz, his plea of guilty to armed robbery in 1987, which resulted in a six-year sentence at hard labor in a Louisiana state prison, together with his pro se 42 U.S.C. § 1983 action against the Minnehaha County Sheriff and his participation in disciplinary actions while in the Minnehaha County jail, indicated that he understood the nature of the charges against him and consequences of entering a guilty plea. The court found that Bailey's answers at the plea hearing showed that he comprehended the questions and that he was not suffering from mental disorders or delusions. Accordingly, the court concluded that Bailey's plea had been knowingly and voluntarily entered and thus affirmed the trial court's denial of the motion to withdraw the plea. State v. Bailey, 546 N.W.2d 387 (S.D. 1996).

After exhausting his state post-conviction remedies, Bailey filed this petition, contending that his right to due process was violated by the denial of his motion to withdraw his guilty plea. In a most thorough, comprehensive memorandum opinion, the district court denied the petition and then issued a certificate of appealability on the question whether the state trial court violated Bailey's right to due process when it refused to allow him to withdraw his guilty plea.

## II.

Our review of a state court's decision is limited by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996. Pub. L. 104-132, 110 Stat. 1214. See Bell v. Cone, 122 S. Ct. 1843, 1849 (2002); Williams v. Taylor, 529 U.S. 362, 403-04 (2000). We may grant the writ only if the state court's adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). The state court's determination of a factual issue is presumed to be correct, and that presumption of correctness can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The only issue before us is whether Bailey's guilty plea was voluntarily and knowingly entered. For a plea to be voluntary, a defendant must have knowledge of the law in relation to the facts. Easter v. Norris, 100 F.3d 523, 525 (8th Cir. 1996) (citing Porter v. Lockhart, 925 F.2d 1107, 1110 (8th Cir. 1991)). Bailey argues that his plea was not voluntary because his lack of intelligence precluded a finding of such knowledge on his part. The Supreme Court of South Dakota expressly found, however, that despite Bailey's intellectual limitations, his 1987 armed robbery conviction in Louisiana, his prior experience with litigation, the extra precautions his counsel took to ensure his understanding, and his answers during the plea colloquy indicated that Bailey comprehended the nature of the charges against him and the consequences of entering a guilty plea.[3]

Our review satisfies us that the record fully supports the South Dakota Supreme Court's finding that Bailey's guilty plea was voluntarily and knowingly entered. As indicated above, by pleading guilty to the charge of first degree manslaughter Bailey avoided being tried on the first degree murder charge, which would have subjected him to the possibility of a sentence of death and at the very least a mandatory sentence of life without possibility of parole. Thus, his contention that he received no benefit from the plea agreement rings hollow. That he was ultimately sentenced to life without the possibility of parole does not detract from the fact that his guilty plea left open the possibility of a sentence of less than that.

---

[3]Whatever Bailey's intellectual limitations may be, they certainly do not diminish his personal culpability for the offense to which he pleaded guilty. Cf. Atkins v. Virginia, 122 S. Ct. 2242 (2002).

In light of the correctness of the state court's finding that Bailey's guilty plea was voluntarily and knowingly entered, its ruling that the trial court did not err in denying Bailey's motion to withdraw his plea was neither contrary to nor an unreasonable application of clearly established federal law. Thus, the district court did not err in denying the petition for habeas relief.

The judgment denying the petition for writ of habeas corpus is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.